IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

********************************

UNITED STATES OF AMERICA

v.

SHALIN JHAVERI,

Defendant.

********************************

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
NOV 5 2010
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

Criminal Action No.
5:10-CR- 523 (NAM)

PLEA AGREEMENT

RICHARD S. HARTUNIAN, United States Attorney for the Northern District of New York (by AUSA Stephen C. Green, appearing), and Defendant SHALIN JHAVERI (with Jodi Mishin Peikin, Esq., Robert Radick, Esq., and Candice Aloisi, Esq., Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., appearing) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

1.   **Defendant's Promises.**   In return for the consideration described below, defendant SHALIN JHAVERI agrees as follows:

a.   The Defendant will waive indictment and enter a plea of guilty to a one-count Information charging him with theft of trade secrets, in violation of Title 18, U.S.C. § 1832(a)(1).

b.   The Defendant consents to the entry of an order directing him to forfeit certain assets to the United States, pursuant to the Forfeiture Allegations set forth in the one-count Information, as more fully set forth below.

c.   The Defendant agrees and consents to the entry of an order of removal/deportation from the United States by an

Immigration Judge, said removal/deportation to be effectuated upon completion of any term of incarceration imposed by the Court. The Defendant further agrees to surrender for removal when requested to do so by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and/or the Federal Bureau of Investigation ("FBI") and stipulates that he will neither seek relief under the Immigration and Naturalization Act nor take an appeal from any removal order imposed by an Immigration Judge. Defendant acknowledges and understands that after that order is executed, he will be inadmissible to the United States under Title 8, United States Code, Section 1182(a)(9).

       d.    The Defendant agrees to submit to a polygraph examination, within 30 days after acceptance and entry of this Plea Agreement by the Court, which examination is to be administered by the Federal Bureau of Investigation. The polygraph examination shall have as its primary focus: (1) the quantity, nature and last known location (to the Defendant) of all of the proprietary information he stole from Bristol-Myers Squibb and (2) any and all other persons who participated in any way in the Defendant's activities in transferring to his control, and later stealing, proprietary information of Bristol-Myers Squibb, or who received or have access to such proprietary information. The results of the polygraph examination shall be made known to the Probation Office and the assigned district judge. Provided the Defendant fully

cooperates with the polygraph examiner in the administration of the examination, the results of the polygraph examination shall not be the sole basis for a claim by the U.S. Attorney's Office that: (1) the Defendant has breached any condition of this Agreement; (2) the Defendant has not demonstrated acceptance of responsibility, as set forth in paragraph 10(a)(iii) of this Agreement; or (3) the Defendant has engaged in any further criminal conduct, including obstruction of justice or the making of a false statement.

e.    The defendant further agrees to keep confidential and not to disclose to, identify, or communicate with any third party regarding the trade secrets and confidential proprietary information of Bristol-Myers Squibb, and/or affiliated companies or entities, that he appropriated without authorization, and neither use them nor allow them to be further disseminated or used by, for or on behalf of himself or any third party. The defendant hereby agrees to remain civilly liable to Bristol-Myers Squibb for damages reasonably and proximately caused by any such disclosure, identification or communication of the trade secrets and to submit himself to the jurisdiction of any appropriate U.S. court (waiving all objections as to jurisdiction), regardless of his whereabouts at the time, for the purposes of litigation alleging such disclosure, identification, or communication. The Defendant further acknowledges that his father, as a necessary condition to this Agreement and for the purpose of minimizing the likelihood of

3

any future misuse of the stolen information, will file with the Court within thirty days of the Court's acceptance of this Plea Agreement, signed, sworn documents by which he waives in advance any objections he may have as to jurisdiction and venue and agrees to submit to the jurisdiction of any appropriate U.S. court for the purposes of civil litigation relating to claims alleging the use or dissemination, or facilitating the use or dissemination, of any of the Bristol-Myers Squibb information appropriated by the Defendant without authorization.

2. **Potential Penalties.** Defendant SHALIN JHAVERI understands that his guilty plea to Count 1 of the Information will subject him to the following potential penalties:

a. <u>Maximum Term of Imprisonment</u>: 10 years.  (18 U.S.C. § 1832(a))

b. <u>Mandatory Minimum Term of Imprisonment</u>:  none.

c. <u>Supervised Release</u>:  In addition to imposing any other penalty, the sentencing Court may require the Defendant to serve a term of supervised release of up to 3 years, to begin at the expiration of any term of imprisonment imposed upon him.  (18 U.S.C. § 3583).  Should the Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to 2 years imprisonment in addition to any prison term previously imposed upon him and in addition to the

statutory maximum term of imprisonment set forth above.  Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

d.  <u>Maximum Fine</u>: $250,000.  (18 U.S.C. § 3571(b)(3)) In its discretion, the Court may impose an alternative fine of the greater of $250,000 or twice the pecuniary gain to the Defendant or loss to any victim resulting from the offense of conviction.  (18 U.S.C. § 3571(b) & (d))

e.  <u>Forfeiture</u>:  The sentence imposed by the Court will include an order of forfeiture, as more fully set forth below.  (18 U.S.C. § 1834).

f.  <u>Special Assessment</u>:  The Defendant will be required to pay an assessment of $100, which is due and payable at the time of sentencing.  (18 U.S.C. § 3013)  The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court at the time of his sentencing.

g.  <u>Interest and Penalties</u>:  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

h.  <u>Collateral Consequences</u>:  Conviction of a felony may result in the loss of certain civil rights, including, but not

limited to, the right to vote or the right to possess firearms and will result in deportation or removal from the United States, consistent with the terms concerning removal/deportation set forth above.

_____3.   **Forfeiture.**   The defendant hereby forfeits to the United States all of his right, title and interest of any nature in any and all assets that are subject to forfeiture, as set forth in the Forfeiture Allegation in the Information, pursuant to 18 U.S.C. § 1834.

a.   The defendant consents to the entry of an order of forfeiture, including but not limited to the assets described below:

i.   one Dell Inspiron laptop computer, service tag #9LZ0SC1, not including files returned to the Defendant from this device;

ii.   one Western Digital 250gb exterior drive, s/n WMANK5047827, not including files returned to the Defendant from this device;

iii.  one Blackberry telephone;

iv.   one leather computer case;

v.    two computer flash drives, generic devices;

vi.   one Nokia cellular telephone, IME #011750/00/198719/4;

6

vii. stack of 26 DVDs and CDs, not including CDs and

DVDs returned to the Defendant; and

viii. miscellaneous papers and documents, not

including certain papers and documents returned to

the Defendant.

b. Forfeiture of the defendant's assets will not

satisfy all, or any portion of, a fine, restitution, or other

penalty that the Court may impose upon the defendant in addition to

forfeiture.

c. The defendant agrees to cooperate with the United

States by taking whatever steps are necessary to pass clear title

to the United States of any forfeitable assets, including but not

limited to, surrendering title; completing any documents or legal

proceedings required to transfer assets to the United States; and

taking necessary steps to ensure that assets subject to forfeiture

are not sold, disbursed, expended, destroyed, damaged, hidden, or

otherwise made unavailable for forfeiture or removed beyond the

jurisdiction of the Court.

d. The defendant waives a jury trial on the forfeiture

of assets. The defendant waives all constitutional, legal, and

equitable defenses to the forfeiture of assets, as provided by this

Agreement, in any proceeding, including but not limited to any

jeopardy defense or claim of double jeopardy or any claim or

defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

e.   The defendant acknowledges that the Government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

f.   The defendant represents and warrants that he has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this Plea Agreement, other than those listed in the Forfeiture Allegation of the one count Information.

g.   In the event the U.S. Attorney's Office determines that the defendant has breached any condition of this Agreement, the defendant agrees that none of the forfeited property shall be returned to him, nor shall he assert any claim to the forfeited property.   The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends or associates.

4.   **Sentencing Factors.**  SHALIN JHAVERI understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum penalties and the provisions of the Sentencing Reform Act and the United States

Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker*, 543 U.S. 220 (2005).   While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, it must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

     5.   **Elements of the Offense.**   Defendant SHALIN JHAVERI understands the following legal elements of the offense stated in Count 1 of the Information, and admits that those elements accurately describe his criminal conduct:

     a.   the Defendant acted with the intent to convert one or more trade secrets related to a product or products produced for or placed in interstate or foreign commerce;

     b.   the Defendant so acted knowing that the offense would injure the owner of such trade secrets; and

     c.   the Defendant knowingly stole, or without authorization appropriated, took, carried away, or concealed; or by fraud, artifice, or deception obtained such information.

     6.   **Factual Basis for the Plea.**   Defendant SHALIN JHAVERI admits the following facts, which establish his guilt with respect to the offense stated in Count One of the Information:

     a.   Defendant SHALIN JHAVERI has a PhD. from Cornell University in chemistry and chemical biology and from November of 2007 through February of 2010 was employed by the Bristol-Myers

Squibb Company ("Bristol-Myers") at its facility in Syracuse, New York.

        b.   at all relevant times, Bristol-Myers was an international company engaged in the research, development, production, and marketing of a variety of pharmaceuticals, medicines, and related products throughout the world. Headquartered in New York City, Bristol-Myers maintained and operated a major facility in Syracuse, New York, within the Northern District of New York, where the Defendant was employed in its management training program. Bristol-Myers at various times relevant here took measures to protect its trade secrets including physical security of the interior and exterior of the premises in Syracuse, implementing data security policies and computer firewalls to prevent unauthorized access, requiring employees to sign confidentiality agreements, maintaining computer firewalls to prevent outsiders from accessing the information stored on its computer network, limiting access to certain of its information to Bristol-Myers employees who had work-related reasons to require access to that information, blocking certain transfers of information outside of Bristol-Myers computer network and monitoring some transfers of information by employees, and classifying and labeling as confidential and proprietary certain documents and other Company information.

c.    at the outset of his employment with Bristol-Myers
in Syracuse, the Defendant signed a confidentiality agreement in
which he agreed to follow and abide by company terms, procedures
and policies to maintain the confidentiality of proprietary
information and to avoid the unauthorized disclosure of any trade
secret or proprietary information to any outsider.

d.    the Defendant was employed as a Technical Operations
Associate at Bristol-Myers, and was participating in the Company's
management training program.  That program, which called for him to
be rotated through various segments and departments of Bristol-
Myers, had given the Defendant access to some of the most sensitive
areas within the company.

e.    while employed in that capacity, and while
participating in Bristol-Myers' management training program, the
Defendant devised a plan to appropriate without authorization and
convert to his own use trade secrets of Bristol-Myers.  Using a
variety of means, primarily downloading and transferring electronic
data and files, the Defendant did misappropriate and gain control
over Bristol-Myers trade secrets, all without authorization and
using methods designed to evade detection by the company.

f.    during and about the period January 22 to 26, 2010,
the Defendant communicated with an individual ("the Investor") he
believed to be interested in financing a pharmaceutical facility he
(the Defendant) planned to start in India.   Defendant SHALIN

11

JHAVERI knew this individual was not employed by or affiliated with Bristol-Myers in any capacity.  The Defendant told the Investor that he would create an email account for the purpose of transferring to the Investor several of the documents he had transferred to his own control (onto his Company-issued laptop computer)from the main Bristol-Myers computer system.   The defendant then created the new email account; composed an email with three attachments, each constituting a  trade secret the Defendant had transferred to his own control from the main Bristol-Myers computer system; and sent that email to himself using this new email address.  The Defendant next gave the email address and password for the newly created email account to the Investor, and discussed these documents with the Investor, identifying them as samples of the proprietary information he had acquired from Bristol-Myers without authorization.

       g.   based on comments later made by the Investor to the Defendant, it was the Defendant's understanding and belief that: (i) on or about January 25, 2010, the Investor, acting at the Defendant's direction and using the password given to him by the Defendant for this purpose, checked the email account the Defendant had described in their earlier communications; (ii) there he found and reviewed an email with three attachments, with each attachment labeled as "BMS Confidential and Proprietary" and constituting information/materials the Defendant had stolen from Bristol-Myers

and (iii) later accessing of that email account by the Investor, again as directed by the Defendant, identified additional trade secret information the Defendant had appropriated from Bristol-Myers without authorization.  The Investor asked the Defendant if he had all the "rest of the stuff" previously described by the Defendant, to which the Defendant replied "yes, I got it."  The Investor also asked the Defendant if that information was everything he needed.  The Defendant responded that it was.

      h.  The parties incorporate by reference, as further factual admissions by the Defendant, the stipulations as to sentencing factors and issues set forth in paragraph 10 below.

      i.  The Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.  The Defendant agrees that his sentence may be determined based upon such judicial fact-finding.

    7.  **Use of Defendant's Admissions.**  The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above in paragraph 6, shall be admissible and useable against the Defendant by the United States

in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

8. **Collection of Financial Obligations.** In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees fully to disclose all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

a. The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful.

b. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

9. **Government's Promises and Reservation of Rights.** In exchange for the plea of guilty to Count One of the Information by Defendant SHALIN JHAVERI and his continuing compliance with all of

14

the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a.   It will bring no further federal criminal charges against the Defendant relating to the conduct in the Northern District of New York, committed before the date of this Agreement, which is described in Count One of the Information and the Defendant's admissions in paragraph 6, above, for so long as the guilty plea and sentence on Count One of the Information remain in effect.

b.   It reserves the right to recommend a specific sentence within the applicable Guidelines range determined by the Court.

c.   The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within Count 1 of the Information.  The U.S. Attorney's Office agrees that it will not affirmatively argue in favor of any further specific sentencing enhancement not referenced in the stipulations set forth in paragraph 10 of this agreement.

10.  **Stipulations.**  The U.S. Attorney's Office and Defendant SHALIN JHAVERI agree to stipulate at sentencing to the statement(s) set forth in subparagraph a below, subject to the caveats set forth in the subparagraphs following.

a.   Stipulations

15

i.    The  base  offense  level  is  6  (U.S.S.G. §2B1.1(a)(2)).

ii.   The intended loss, as measured by the value of the trade secret information contained in the three attachments to the January 2010 draft email, is approximately $193,000, resulting in an increase of 10 levels (U.S.S.G. §2B1.1(b)(1)(F)).

iii. The U.S. Attorney's Office will recommend a 2-level downward adjustment to the applicable Sentencing Guidelines range if, (A) through the time of sentencing, the Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government for the offense, as defined in U.S.S.G. § 3E1.1(a); and (B) the Government does not learn of new evidence of conduct committed by the Defendant, either before or after his guilty plea, that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1. If the defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government and promptly enters a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently, the U.S. Attorney's Office may, in its sole discretion, move for an additional downward adjustment of 1 level, if the Defendant otherwise qualifies under U.S.S.G. § 3E1.1(b).

b.    Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict

16

with certainty the Defendant's Criminal History Category and, in some cases, his total offense level.

c.   It is understood that these stipulations cannot and do not bind the sentencing Court, which may make independent factual findings by a preponderance of the evidence and may reject any or all stipulations between the parties.  The rejection of any or all stipulations by the Court will not be the basis for the withdrawal of a plea of guilty by the Defendant, and will not release either the U.S. Attorney's Office or the Defendant from any other portion of this Agreement, including any other stipulations agreed to herein.

d.   No stipulation in this Agreement shall affect the parties' respective obligations to ensure that, to the extent possible, the Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any such factual information to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report, and agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this Agreement.

e.   To the extent the stipulations above do not reflect agreement on any factor or issue potentially affecting the applicable advisory Sentencing Guidelines range, the Defendant and the U.S. Attorney's Office each expressly reserves the right to

17

advocate if, and how, any such factor or issue would apply under the Sentencing Guidelines, except as noted above in paragraph 9c.

11. **Preliminary Sentencing Guidelines Estimates.** The Defendant understands that any estimate of the Defendant's Sentencing Guidelines range provided before sentencing is preliminary and is not binding on the parties to this Agreement, the Probation Office, or the Court.

12. **Remedies for Breach.** Should the U.S. Attorney's Office determine that the Defendant, after the date of this Plea Agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged) or (ii) has otherwise breached any condition of this Agreement, the U.S. Attorney's Office will have the right, in its sole discretion, to void this Agreement, in whole or in part. In the event of any such breach, the Defendant will not be permitted to withdraw his guilty plea under this Agreement, but will thereafter be subject to prosecution for any federal criminal violation of which the U.S. Attorney's Office has knowledge, including but not limited to charges that this Office has agreed to dismiss or has agreed not to prosecute.

a. The Defendant waives any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date of this Agreement, notwithstanding the expiration of the statute of limitations

18

between the signing of this Agreement and the commencement of any such prosecution.

       b.   Moreover, in connection with any such prosecution, any information, statement, or testimony provided by the Defendant, and all leads derived therefrom, may be used against him, without limitation. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

       c.   In the event of any such breach by the Defendant, the U.S. Attorney's Office will have the right, in its sole discretion, to do the following, notwithstanding any contrary provision or stipulation in this Plea Agreement:

       i.   to advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range;

       ii.   to utilize any information, statement, or testimony provided by the Defendant in determining the applicable Sentencing Guidelines range;

       iii. to recommend a specific sentence of imprisonment within or above the applicable Sentencing Guidelines range determined by the Court.

    13.  **Limitations on Agreement.**  This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting

authorities.   Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability or proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the Defendant.

14. **Agreement Not Binding on the Court.**   The Court is neither a party to, nor bound by this Agreement.   The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

a.   If the Court rejects the provisions of this Agreement permitting the Defendant to plead guilty to Count One of the Information in satisfaction of other charges, which provisions were negotiated pursuant to Fed. R. Crim. P. 11(c)(1)(A), the Court will afford the Defendant an opportunity to withdraw his plea of guilty prior to sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

b.   The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his plea of guilty if the Court declines

20

to follow any such recommendation, stipulation, or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

15. **Waiver of Defendant's Rights.** The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions. The Defendant further acknowledges that his plea is voluntary and did not result from any force, threat, or promises other than the promises in this Plea Agreement.

a. The Defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his constitutional and other rights with defense counsel. The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

b.   The Defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence.   The Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines as explained further in paragraph 3 above and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

16.   **Waiver of Appeal and Collateral Attack.**   The Defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case.   The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of 18 months or less, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed. The Defendant acknowledges that the number of months specified above is not a promise of any particular sentence and is not binding on the Court. The Defendant agrees that, should the sentence imposed exceed 18 months, this would not permit him to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the

22

Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255.

17. **Memorialization of Agreement.** No promises, agreements or conditions other than those set forth in this Agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court. This Agreement, to become effective, must be signed by all of the parties listed below.

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated:   October 26, 2010    By: _____
Stephen C. Green
Assistant U.S. Attorney
Bar Roll No. 507767

Dated:   October 25, 2010    _____
SHALIN JHAVERI
Defendant

Dated:   __October 27, 2010    _____
Jodi Misher Peikin, Esq.
Robert Radick, Esq.
Candice Aloisi, Esq.
Morvillo, Abramowitz, Grand,
Iason, Anello & Bohrer, P.C.
Attorneys for Defendant
Bar Roll No. 516011 (For Robert M. Radick)

23